## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

JARELL D. TERRY,                                                    PLAINTIFF
ADC # 149998

v.                                    2:22CV00084-JTK

KENYON RANDLE, et al.                                            DEFENDANTS

## <u>ORDER</u>

Jarell D. Terry ("Plaintiff") is in custody at the East Arkansas Regional Unit ("EARU") of

the Arkansas Division of Correction ("ADC").  He filed this action under 42 U.S.C. § 1983 without

the help of a lawyer.  Plaintiff sued Warden Gaylon Lay, Deputy Warden Michael Richardson,

and Major Kenyon Randle in their personal and official capacities. (Doc. Nos. 1, 8, 30).  Plaintiff's

claims against Defendants Lay and Richardson were dismissed for failure to exhaust

administrative remedies.  (Doc. Nos. 32, 38).  Plaintiff's denial of outdoor exercise claim against

Defendant Randle remains pending.

Defendant Randle filed a Motion for Summary Judgment on the merits of Plaintiff's

claims, along with a brief in support and statement of facts.  (Doc. Nos. 48-50).  Plaintiff has

responded.  (Doc. Nos. 58-60).  Additionally, on June 13, 2023, the Court held an evidentiary

hearing to further develop the record in connection with Defendant Randle's Motion for Summary

Judgment.

After careful consideration, and for the reasons set out below, Defendant Randle's Motion

for Summary Judgment (Doc. No. 48) is GRANTED.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct
all proceedings and order the entry of a final judgment.  (Doc. No. 28).

## I.        Introduction—Plaintiff's Complaint and Amended Complaint

During the times relevant to Plaintiff's claims, Plaintiff was housed in the Maximum Security section of the EARU.  In his Complaint filed on May 18, 2022, Plaintiff alleges that "within the past 90 days [he has] been afforded outdoor exercise approximately 4-6 times."  (Doc. No. 1 at 4).  According to Plaintiff, Defendant Randle failed to ensure inmates in the EARU Max unit receive appropriate outdoor exercise.  (Id.).  Plaintiff says the lack of outdoor exercise caused vitamin deficiencies, muscle atrophy, and aggravated Plaintiff's anxiety, among other ill effects. (Id.).  Plaintiff refined his claims in his Amended Complaint.  (Doc. No. 30).  In his Amended Complaint, Plaintiff alleged that since January 10, 2020, he has "been deprived of adequate outdoor exercise for 90 days at a time and approximately 4-5 days within a six-month period . . . ."  (Id. at 1).  Plaintiff seeks damages and injunctive relief.  (Id. at 2).

## II.       Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion

for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must

be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

## III.    Background

It is uncontested that at all times relevant to this lawsuit, Plaintiff was housed in the

following barracks at the EARU:

January 15, 2020 to January 20, 2020:       MAX6
January 20, 2020 to January 21, 2020:       ISO3
January 21, 2020 to February 7, 2020:       ISOl
February 7, 2020 to March 30, 2020:        MAX8
March 30, 2020 to April 6, 2020:           1SO2
April 6, 2020 to May 11, 2020:             MAX4
May 11, 2020 to July 12, 2020;             ISO2
July 12, 2020 to January 26, 2021:         MAX5
January 26, 2021 to February 25, 2021:      ISOI
February 25, 2021 to June 10, 2021:        MAX5
June 10, 2021 to June 13, 2021:            ISO2
June 13, 2021 to July 3, 2021:             ISOl
July 3, 2021 to August 14, 2021:           ISO2
August 14, 2021 to October 22, 2021:       ISOl
October 22, 2021 to December 4, 2021:      ISO2
December 4, 2021 to December 15, 2021: MAX7
December 15, 2021 to January 21, 2022:     ISO3
January 21, 2022 to April 14, 2022:        MAX7
April 14, 2022 to May 18, 2022:            ISO3

Administrative Directive 2021-15 explains the ADC's policy regarding restrictive housing.

(Doc. No. 48-3).  AD 2021-15 defines restrictive housing as "[p]lacement that requires an inmate

to be confined to a cell at least twenty-two (22) hours per day."  (Id. at 1).   Inmates in restrictive

housing

will have opportunity for exercise, a minimum of one (I) hour of exercise per day,
five (5) days per week, unless security or safety dictates otherwise. Opportunities
may be available to exercise outdoors, weather permitting. Reasons for the
imposition of any constraints should be documented in the log and justified in
writing. Inmates who have out-of-cell work Assignments are not required to receive
the one-hour exercise period.

(Id. at 4).  While different policies may have governed the availability of outdoor recreation based on where Plaintiff was housed, at all times relevant to this lawsuit the applicable policies provided for one hour of out-of-cell recreation or exercise five days per week.  (Doc. No. 48-1 at 35:9-40:4). If an inmate is on behavior control or treatment precautions, however, the inmate is not offered the opportunity for yard call.  (Doc. No. 50 at ¶ 17; Doc. No. 59 at ¶ 17).

It is undisputed that Plaintiff was given the opportunity to exercise outside of his cell on the following dates:

| | | |
|---|---|---|
| February 3, 2021 | August 26, 2021 | October 8, 2021 |
| July 13, 2021 | September 2, 2021 | January 11, 2022 |
| July 15, 2021 | September 9, 2021 | January 31, 2022 |
| July 27, 2021 | September 10, 2021 | March 31, 2022 |
| August 3, 2021 | September 13, 2021 | May 10, 2022 |

(Doc. No. 50 at ¶ 30; Doc. No. 59 at ¶ 30).

It is further undisputed that Plaintiff refused his yard call opportunities on: September 9, 2021; September 10, 2021; September 13, 2021; and October 8, 2021.  (Doc. No. 50 at ¶ 31; Doc. No. 59 at ¶ 31).

It is also undisputed that Plaintiff was not given the opportunity to exercise outside on the following dates due to staffing shortages:

| Month & Year | Dates |
|---|---|
| September 2021 | 1, 4-8, 11-12, 14-30 |
| October 2021 | 1-7, 9-31 |
| November 2021 | 1-30 |

| | |
|---|---|
| December 2021 | 1-31 |
| January 2022 | 1-10, 12-31 |
| February 2022 | 1-28 |
| March 2022 | 1-31 |
| April 2022 | 1-30 |
| May 2022 | 1-9, 11-18 |

(Doc. No. 50 at ¶ 32; Doc. No. 59 at ¶ 32).

Plaintiff acknowledges that a shortage of officers on a shift constitutes a security issue. (Doc. No. 50 at ¶ 17; Doc. No. 59 at ¶ 17).  Plaintiff also acknowledges that when there is a security issue, then there will be no yard call.  (Doc. No. 50 at ¶ 17; Doc. No. 59 at ¶ 17).

Additionally, it is undisputed that there are no "logs and/or incident reports" for the entire year of 2020, as well as the months of January, March, and June 2021.  (Doc. No. 50 at ¶ 33; Doc. No. 59 at ¶ 33).  Logs and/or incident reports also are missing for the following dates in 2021:

| Month | Dates |
|---|---|
| February | 1-2, 4-28 |
| April | 1-4, 6-30 |
| May | 1-12, 14-31 |
| July | 1-12, 14, 16-25, 27-31 |
| August | 1-2, 4-25, 27-31 |

(Doc. No. 50 at ¶ 33; Doc. No. 59 at ¶ 33).

Again, in his Amended Complaint, Plaintiff alleged that since January 10, 2020, he has "been deprived of adequate outdoor exercise for 90 days at a time and approximately 4-5 days within a six-month period . . . ."  (Doc. No. 30 at 1).  During his deposition, Plaintiff testified that the Max Unit was on Covid-19-related lockdown from the beginning of 2020, until yard call resumed "like the end of 2020."  (Doc. No. 48-1 at 24:12-24:19).  During that time, Plaintiff said

that "they just stopped running [yard call]." (<u>Id</u>. at 44:21).  Plaintiff further testified that when he

was moved to MAX5 in February 2021 they were "doing yard call . . . [during this] actual time

period." (<u>Id</u>. at 24:2-24:11).  Plaintiff was in MAX5 on that occasion from February 25, 2021 to

June 10, 2021.  (<u>Id</u>. at 25:2-25:5).   Plaintiff also testified that the longest time he went without

yard call was "40 some days." (<u>Id</u>. at 43:1-43:7).  Plaintiff then explained that "somewhere during

the time period" he went longer than 40 days without yard call.  (<u>Id</u>. at 43:8-43:10).

IV.    **Analysis**

Plaintiff sued Defendant Randle is his personal and official capacities.

A.    **Individual Capacity Claims**

Plaintiff sued Defendant Randle under 42 U.S.C. § 1983.  "Liability under § 1983 requires

a causal link to, and direct responsibility for, the alleged deprivation of rights." <u>Madewell v.

Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990).  "Because vicarious liability is inapplicable to . . .

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." <u>Parrish v. Ball</u>, 594 F.3d 993, 1001 (8th

Cir. 2010) (<u>citing</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)).  Bare allegations void of factual

enhancement are insufficient to state a claim for relief under § 1983.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

1.    **Qualified Immunity**

Defendant Randle argues he is shielded from liability in his individual capacity by qualified

immunity, which protects officials who act in an objectively reasonable manner.  Qualified

immunity may protect a government official from liability when his or her conduct does not violate

"clearly established statutory or constitutional rights of which a reasonable person would have

known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law,

not a question of fact.  <u>McClendon v. Story County Sheriff's Office</u>, 403 F.3d 510, 515 (8th Cir.

2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 2.   Prison Policy

To the extent Plaintiff bases his claims on the violation of prison policy, his allegations fail to state a § 1983 claim on which relief may be granted. Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. Cir. 1997).

### 3.   Federally Protected Rights

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the 'minimal civilized measure of life's

---

[2] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 342 (1981)).  In addition, the defendant's conduct also must demonstrate a subjective state of mind that indicates deliberate indifference to the health or safety of the prisoner.  Id. (citing Estelle v. Gamble, 429 U.S. 97, 104 (1977)).  To succeed on a deliberate indifference claim, a plaintiff must show that "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)).

The Court is not aware of precedent from the Eighth Circuit Court of Appeals establishing an inmate's right to outdoor exercise.  And other Circuits are split on the issue.  See Roos v. Clark, No. 419CV00895BRWPSH, 2022 WL 4229981, at *10 (E.D. Ark. Aug. 26, 2022), report and recommendation adopted, No. 419CV00895BRWPSH, 2022 WL 4225965 (E.D. Ark. Sept. 13, 2022) (gathering cases).  The right to outdoor exercise, then, is not clearly established in the Eighth Circuit.  See Burton v. Richmond, 370 F.3d 723, 730 (8th Cir. 2004).

And "[r]equiring an inmate to exercise in an enclosed area is not itself a per se violation of the Eighth Amendment."  Hosna v. Groose, 80 F.3d 298, 306 (8th Cir. 1996).  But the United States Supreme Court has explained that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.  Wilson v. Seiter, 501 U.S. 294, 304 (1991) (internal citations omitted).  For example, lack of outdoor exercise combined with confinement in small cell for almost 24-hours-a-day.  See Id.

In the Eighth Circuit, courts considering whether a deprivation of exercise amounts to a constitutional violation take into account: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement.

Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992).  This test takes into account, then, a combination of conditions.  Further, it is clearly established that the "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened."  Id.

In Wishon v. Gammon, the Court of Appeals for the Eighth Circuit affirmed the District Court's finding that 45-minutes per week of out-of-cell recreation was not unconstitutional.  (Id.).  In that case, the plaintiff's cell measured 7 x 9 feet.  (Id. at 447).  In addition to 45 minutes per week of out-of-cell recreation, the plaintiff left his cell for showers and phone calls.  (Id. at 449).  The Court of Appeals also considered the fact that the plaintiff did not use all of the recreation time available to him, and that he had the opportunity to exercise inside of his cell.  (Id.).

In Rahman X v. Morgan, the plaintiff, an Arkansas Department of Corrections inmate, was not allowed to go outside to exercise for three months.  300 F.3d 970 (8th Cir. 2002).  Taking into account that the plaintiff was allowed activity outside of his cell, even if not outdoors, the Court of Appeals for the Eighth Circuit found that the three-month deprivation of outdoor activity was not "sufficiently serious to establish an Eighth Amendment violation."  Id. at 974.

In 2003, the Eighth Circuit Court of Appeals decided Phillips v. Norris, 320 F.3d 833 (8th Cir. 2003).  In Phillips, the plaintiff claimed that the denial of out-of-cell exercise violated his Eighth Amendment rights, among other claims.  (Id.).  The Court of Appeals noted a case in which the Seventh Circuit "upheld a '90–day threshold for considering a denial of out-of-cell exercise opportunities a possible violation of the cruel and unusual punishments clause.'"  Id. at 848.  The Court of Appeals for the Eighth Circuit then explained that "[w]hile there may be some time less than ninety days that violates the Eighth Amendment, we do not think that the thirty-seven day period in this instance does so."  Id.

More recently in this District, Untied States District Judge Billy Roy Wilson denied summary judgment in favor of the defendants where it was undisputed that the plaintiff, a pretrial detainee, was not allowed to go outdoors for 13 consecutive months. Ganahl v. Staley, No. 4:16CV00015 BRW/JTR, 2017 WL 5505010, at *5 (E.D. Ark. Nov. 16, 2017), report and recommendation adopted, No. 416CV00015BRWJTR, 2017 WL 6045429, at *5 (E.D. Ark. Dec. 6, 2017). The plaintiff was also prohibited for 13 months from using the recreation room, and was not allowed to jog in place or do calisthenics in any of the day rooms. (Id.). For four of those months, the plaintiff did not have enough space to exercise in his two-man cell. (Id.). Judge Wilson considered the lack of in-cell and out-of-cell exercise in denying qualified immunity. (Id.). While not binding, this case is instructive.

On April 10, 2023, the United States Court of Appeals for the Eighth Circuit affirmed the District Court's dismissal of the plaintiff's lack of outdoor exercise claims. The plaintiff was confined in Southwest Arkansas Community Corrections. Raper v. Maxwell, et al., 4:22-cv-04025-SOH (W.D. Ark.) (Doc. No. 1). In his Complaint, the plaintiff alleged that he was allowed to go outside on yard call only three times in six months. (Id. at 4-5). United States Magistrate Judge Barry Bryant recommended that the defendants' Rule 12(b)(6) Motion to Dismiss be granted because three yard call opportunities in six months did not amount to an "atypical and significant hardship." Raper v. Maxwell, No. 4:22-CV-04025, 2022 WL 17834353, at *3 (W.D. Ark. Sept. 15, 2022), report and recommendation adopted sub nom. Raper v. Minors, No. 4:22-CV-4025, 2022 WL 17352569 (W.D. Ark. Dec. 1, 2022). The Recommendation was adopted and affirmed on appeal. Raper v. Maxwell, No. 23-1011, 2023 WL 2857253 (8th Cir. Apr. 10, 2023). Judge Bryant's recommendation cited precedent involving both the Eighth and Fourteenth Amendments.

***

Plaintiff's circumstances in the case at hand are troubling, but do not reach the level of

Ganahl.   Plaintiff testified at the June 13, 2023 hearing that before the Covid-19 pandemic, yard

call was conducted regularly—three to five times per week.   During the Covid-19 lockdown, there

was no yard call.   Understandably so.   To the extent yard call was not conducted as a result of

Covid-19 precautions, Defendant Randle is entitled to qualified immunity: there is no clearly

established law that would have put Defendant Randle on notice that discontinuing yard call during

the pandemic would violate an inmate's rights.   Plaintiff even testified that he understood why

yard call was not conducted during the pandemic.   (Doc. No. 48-1 at 14:9-14:17).

As Covid-related restrictions eased, the EARU began conducting yard call again.   Plaintiff

testified at his deposition that yard call was being run while he was in Max 5 from February 25,

2021 to June 10, 2021.   (Doc. No. 48-1 at 24:2-24:11, 25:2-25:5).[3]   It is undisputed that Plaintiff

was offered the opportunity for yard call in July, August, September, and October 2021.   Plaintiff

declined some of those opportunities.    Plaintiff was not offered yard call in November and

December, 2021.   In January 2022, Plaintiff went to yard call twice.   Then in March and April,

2022, yard call was not offered due to staffing shortages.   Plaintiff had yard call again on May 10,

2022, just shortly before he filed this case on May 18, 2022.

Plaintiff generally left his cell for shower call from two-to-three times per week.   At all

relevant times, Plaintiff had the opportunity to exercise in his cell and was able to do so.   (Doc.

No. 50 at ¶ 35; Doc. No. 59 at ¶ 35).   Plaintiff could to push-ups and sit-ups in his cell, but could

not run inside of his cell.   (Doc. No. 50 at ¶ 36; Doc. No. 59 at ¶ 36).   Plaintiff testified at the June

---

[3] The Court notes that yard call records are missing for much of this period because, according to Defendant Randle's testimony and the testimony of current EARU Deputy Warden Christopher Johnson at the June 13 hearing, rats nested in and destroyed the records.

13 hearing, however, that he could walk in his.  And Defendant Randle testified that nothing prevented Plaintiff from running in place inside of his cell.  Plaintiff testified that he had a physical condition that made it painful for him to walk back and forth inside of the cell, but there is no evidence Defendant Randle knew of any such condition, and no medical records establish the nature of the condition or that Plaintiff had any type of associated medical restriction.  Plaintiff submitted one condensed health services encounter form showing that on November 5, 2021 Plaintiff was seen by APN Tracy Bennet Plaintiff and complained of knee and hip pain.  (Doc. No. 23 at 3-4; Doc. No 36 at 3-4).  The report reflects that Plaintiff "reports pain since he [w]as a teenager, was told he has bone on bone by freeworld provider." (Doc. No. 23 at 3-4; Doc. No 36 at 3-4).  Plaintiff testified at the June 13 hearing that he has a vitamin D and C deficiency caused by insufficient time outdoors, but he provided no medical evidence of that.  At the June 13 hearing, Plaintiff also conceded that he had no proof that the alleged lack of exercise caused muscle loss. Plaintiff further testified that not being allowed out of his cell negatively impacted his mental health.

At the June 13 hearing, Defendant Randle testified to the staffing shortages the EARU suffered as a result of the pandemic.  Defendant Randle, who had no authority to hire new staff, was in the unenviable position of allocating insufficient numbers of staff to ensure inmates got showers, medical care, hair cuts, and yard call.  Defendant Randle also testified as to his efforts to recruit new employees.  Once Defendant Randle recommended a person for hire, the person had to pass background screening and be approved by the Unit Superintendent.  More often than not, Defendant Randle's recruitment efforts were unsuccessful.

When Plaintiff asked Defendant Randle if yard call could have been conducted at night, Defendant Randle explained that would not have been possible because there was no outdoor

lighting.  Defendant Randle's testimony also revealed that he had requested outdoor lighting, but his request had been denied.

As the record reflects, yard call was conducted at times.  While the Court of Appeals for the Eighth Circuit repeatedly has found that the denial of exercise does not rise to the level of a constitutional violation, the Court of Appeals has not drawn a line in the sand demarking at what point and under what circumstances a denial is a per se violation.

Covid-19 restrictions at the EARU Max relaxed as of January or February, 2021.  Between January 2021 and May 2022, Plaintiff was given the opportunity for yard call on 15 separate occasions; he declined four of those 15 chances to go to the yard.  He was allowed to exercise in his cell at all times, including running in place.  He left his cell for shower call multiple times per week.  Plaintiff acknowledged that staffing shortages constituted a security concern.  Defendant Randle made efforts to recruit new employees, to no avail.  Defendant Randle requested outdoor lights for the yard so yard call could have been conducted during a wider range of hours, again to no avail.  Defendant Randle balanced yard call with shower, medical, and hair cut calls.

Under these specific circumstances, and considering the law set out above, Plaintiff has not met proof with proof to establish that Defendant Randle was deliberately indifferent.  And even if there was a violation, there was no clearly established law to put Defendant Randle on notice that his conduct would result in the violation of Plaintiff's constitutional rights.  As such, Defendant Randle is entitled to qualified immunity in connection with Plaintiff's post-Covid-lockdown claims, too.

### B.    Official Capacity Claims

Plaintiff sued Defendant Randle in his official capacity, as well.  Plaintiff's official capacity claims against Defendant Randle are the equivalent of claims against the state of Arkansas;

Plaintiff's official capacity damages claims are barred by Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).   The Eleventh Amendment does not bar official capacity claims for prospective injunctive relief.  McDaniel v. Precythe, 897 F.3d 946, 951-52 (8th Cir. 2018) (Ex Parte Young established state officials may be sued in official capacity for prospective injunctive relief) (citing Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).  While the Eleventh Amendment does not bar prospective injunctive relief, "to establish liability in [an] official-capacity suit under § 1983, [a] plaintiff must show, inter alia, that [the defendant] named in [the] suit took action pursuant to [an] unconstitutional governmental policy or custom.  Hood v. Norris, 189 F. App'x 580 (8th Cir. 2006) (internal citations omitted).  As such, without underlying individual liability on Defendant Randle's part, Plaintiff's official capacity claim for injunctive relief also fails.

Defendant Randle eventually left the EARU.  Generally, when a defendant is sued in his official capacity, those official capacity claims may continue against the defendant's successor. FED. R. CIV. P. 25(d).  See also, for example, Tara Enterprises, Inc. v. Humble, 622 F.2d 400, 401 (8th Cir.1980) (where "monetary damages are not sought nor any other relief which would be operative against these defendants who no longer possess any official power, the action against them is, of course, moot").  But as the Court found there was no violation—and even if there was Defendant Randle is entitled to qualified immunity—there is no basis to continue Plaintiff's official capacity claims against any successor.

Regardless, the Court is deeply troubled about the frequency of yard call at the EARU Max after Defendant Randle's tenure ended.  The testimony of EARU Deputy Warden Christopher Johnson at the June 13, 2023 hearing regarding the current frequency of yard call was shocking. Both Plaintiff and Deputy Warden Johnson testified that yard call currently was not being

conducted at all, and had not been conducted for some time. Deputy Warden Johnson explained that staffing levels now are even lower than during Defendant Randle's tenure. Deputy Warden Johnson also explained that shower and medical visits were still taking place, but yard call had been shut down. The Court inquired of Deputy Warden Johnson whether he could alternate shower call with yard call; Deputy Warden Johnson answered that he could not say that could not be done, but was not the practice. This begs the rhetorical question of whether outright denial of out-of-cell exercise for extended periods when yard call could be alternated with shower call constitutes deliberate indifference. The Court refrains from speculating at an answer to that rhetorical question; advisory opinions must be avoided. And moreover, that would be a different lawsuit than the one at hand, with a different defendant(s), and a record of fact as of yet undeveloped.

## V.    Summary

Where, as here, Defendant Randle moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in Defendant Randle's favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). And as set out above, even if there was a violation, Defendant Randle is entitled to qualified immunity. Accordingly, Defendant Randle's Motion is granted and Plaintiff's claims against Defendant Randle are dismissed with prejudice.

IT IS SO ORDERED this 22nd day of June, 2023.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE